**Russell M. DOUGHTY, Plaintiff,**

v.

**NEBEL TOWING CO., Inc., Defendant.**

**Civ. A. No. 15710.**

United States District Court
E. D. Louisiana,
New Orleans Division.

July 13, 1967.

Jack C. Benjamin, New Orleans, La., for plaintiff.

Gerard T. Gelpi, New Orleans, La., for defendant; J. Barbee Winston, New Orleans, La., of counsel.

RUBIN, District Judge.

The plaintiff, who was employed by the defendant as a member of the crew of a tugboat, was injured when the tug sank. He sued for maintenance and cure and for damages resulting from the injuries suffered by him, setting forth claims under both the Jones Act and the general maritime law, and he demanded trial by jury. The defendant denied liability and also invoked the limitation of liability statute.[1] The plaintiff asserts that the issues arising from the plea for limitation of liability should be tried by the jury; the defendant contends that all issues arising out of this defense should be determined by the Court sitting in admiralty.

Limitation of liability was a doctrine of maritime law [2] based on the concept that the shipowner's exposure to loss should be limited to the value of his investment—the ship.[3] After the concept was rejected by American Courts,[4] Congress, in 1851, adopted an act for the limitation of liability. The act did not provide expressly how the limitation of liability should be asserted procedurally, saying only that either the claimants or the vessel owner might "take the appropriate proceedings in any court" and that surrender of the vessel by the owner to a court appointed trustee for the claimants should "be deemed a sufficient compliance" with the Act.[5]

In the first of the limitation cases to come before the Supreme Court, Norwich & N. Y. Transportation Company v. Wright, 1871, 80 U.S. (13 Wall.) 104, 20 L.Ed. 585, the Court issued "Supplementary Rules of Practice in Admiralty" under which the owner could claim limitation of liability either by filing a pe-

---

1. 46 U.S.C. § 183.

2. Norwich & New York Transportation Co. v. Wright, 1871, 80 U.S. (13 Wall) 104, 123, 20 L.Ed. 585; The Rebecca, D.C. Maine, 1831, 20 Fed.Cas. p. 373, Case No. 11,619. For a historical background of limitation of liability, see the opinion of Mr. Justice Brown in The Main v. Williams, 1894, 152 U.S. 122, 14 S.Ct. 486, 38 L.Ed. 381.

3. Gilmore & Black, The Law of Admiralty, 1957, p. 663.

4. Concurring opinion of Justice Woodbury in New Jersey Steam Navigation Co. v. Merchant's Bank, 1848, 47 U.S. (6 How.) 344, 434, 12 L.Ed. 465; The Rebecca, supra Note 2.

5. 46 U.S.C. § 185, before amendment on June 5, 1936, by Public Law 662, Ch. 521, Sec. 3.

tition for limitation or by invoking the Limitation Act as a defense.[6] These rules were made a part of the statute by an amendment adopted in 1936.

There is of course no right to a trial by jury in admiralty proceedings, and when the Limitation Act is invoked by a separate proceeding the case is clearly one to be tried by the Admiralty Court.[7] The merger of Admiralty Rules with the Rules of Civil Procedure did not alter this for Rule 38(e) provides expressly that, "These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim * * *."

But when the shipowner elects to assert his right to limitation by way of defense to a claim with respect to which the plaintiff is entitled to a jury trial under the Jones Act[8] at least some of the issues relevant to the plaintiff's right to recover involve the same evidence and the same determinations as those involved in the demand for limitation of liability.

For example, the shipowner's right to limit his liability depends on his "privity or knowledge" of the cause of loss.[9] In the case of individual owners, "privity as used in the statute means some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury."[10] In cases involving corporate owners, "lia-

bility may not be limited under the statute where the negligence is that of an executive officer, manager, or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred."[11]

But with respect to corporate owners, Gilmore and Black summarize, "Some duties appear to be 'nondelegable,' which is a way of saying that the corporation will be conclusively presumed to have 'privity or knowledge' of the breach, or, more directly, that the corporation will not be entitled to limit its liability in such a case no matter what the state of proof on actual privity or knowledge."[12] These non-delegable duties are "all facets of * * * the shipowner's duty to provide a seaworthy ship or at least to use due diligence to do so."[13] If the corporate owner fails to use due diligence to send out a seaworthy ship, one that is "tight, staunch, strong, and well and sufficiently tackled,"[14] and if, as a result, the ship sinks, there is obviously a breach of the duty to provide a seaworthy ship, and the owner will be denied limitation.[15]

Where, as here, the ship sank, the plaintiff will obviously seek to show that the sinking was due to lack of seaworthiness in the "primitive sense," that is "what any English-speaking person,

---

. The Scotland, 1882, 105 U.S. 24, 26 L. Ed. 1001; The Benefactor, 1880, 103 U. S. 239, 26 L.Ed. 351; California Yacht Club of Los Angeles v. Johnson, 9 Cir., 1933, 65 F.2d 245; The H. F. Dimock, S.D.N.Y., 1892, 52 F. 598.

. Norwich & N. Y. Transportation Co. v. Wright, supra, Note 2; Waring v. Clarke, 1847, 46 U.S. (5 How) 441, 460, 12 L.Ed. 226; Doucette v. Vincent, 1 Cir., 1952, 194 F.2d 834; The Eastland, 7 Cir., 1935, 78 F.2d 984.

. 46 U.S.C.A. § 688.

. 46 U.S.C. § 183.

10. Coryell v. Phipps (The Seminole), 1943, 317 U.S. 406, 410, 63 S.Ct. 291, 293, 87 L.Ed. 363.

11. Ibid.

12. Gilmore & Black, The Law of Admiralty, 1957, p. 701.

13. Id. at p. 702.

14. Ibid. This is the language used in the customary charter-party warranty. See also the language in New England S.S. Co. v. Howard, 2 Cir., 1942, 130 F.2d 354.

15. States Steamship Company v. United States, 9 Cir., 1957, 259 F.2d 458; Hudgins v. Gregory, 4 Cir., 1955, 219 F.2d 255; Griffith v. Gardner, 9 Cir., 1952, 196 F.2d 698; Petition of Midwest Towing Company, E.D.Ill., 1962, 203 F.Supp. 727, aff'd sub nom., Midwest Towing Company v. Anderson, 7 Cir., 1963, 317 F.2d 270.

not a member of the admiralty bar, would expect it to mean today." [16] The issue as to seaworthiness is therefore virtually identical in determining whether the plaintiff is entitled to recover and whether the defendant has a right to limit liability.

■ The plaintiff has a right to trial by jury, not only of his claim under the Jones Act, but also of all of the counts properly included in his Jones Act suit. In Fitzgerald v. United States Lines Co., 1963, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720, claims were made under the Jones Act, for unseaworthiness under the general maritime law, and for maintenance and cure. Justice Black's opinion said:

> "Although remedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of slightly different principles and procedures, they nevertheless, when based on one unitary set of circumstances, serve the same purpose of indemnifying a seaman for damages caused by injury, depend in large part upon the same evidence, and involve some identical elements of recovery. Requiring a seaman to split up his lawsuit, submitting a part of it to a jury and part to a judge, unduly complicates and confuses a trial, creates difficulties in applying doctrines of *res judicata* and collateral estoppel, and can easily result in too much or too little recovery. * * * In the absence of some statutory or constitutional obstacle, an end should be put to such an unfortunate,

outdated, and wasteful manner of trying these cases. * * *

> "While this Court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them. Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases. * * * Only one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments. And since Congress in the Jones Act has declared that the negligence part of the claim shall be tried by a jury, we would not be free, even if we wished, to require submission of all the claims to the judge alone. Therefore, the jury, a time-honored institution in our jurisprudence, is the only tribunal competent under the present congressional enactments to try all the claims. * * * " [17]

A question similar to the one presented here arises when an equitable counter-claim is asserted to a legal claim in which the plaintiff has demanded a jury trial. In such situations it has been held that the issues raised by the counter-claim should be submitted to the jury at the trial and should not be decided by the Court without a jury prior to trial.[18] It has been held that in a suit involving both legal and equitable issues, that is, so long as any legal cause is involved, the constitutional right to a jury trial controls, and a litigant cannot be denied a jury trial because the legal issues presented are incidental to equitable issues.[19]

16. Gilmore & Black, supra Note 3, at p. 702.

17. See Gvirtsman v. Western King, C.D. Cal., 1967, 263 F.Supp. 633. The question had been left open in Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368, rehearing denied 359 U.S. 962, 79 S.Ct. 795, 3 L.Ed.2d 769.

18. Garman v. Metropolitan Life Insurance Company, 3 Cir., 1949, 175 F.2d 24.

19. Shubin v. United States District Court, 9 Cir., 1963, 313 F.2d 250, cert. denied 373 U.S. 936, 83 S.Ct. 1539, 10 L.Ed.2d 690. Compare Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 5 Cir., 1961, 294 F.2d 486, which was an injunction suit. There was a counter-claim for damages for patent infringement and a trial by jury. The court held that a jury trial should have been ordered. "The mere presence of an equitable cause furnishes no justification of depriving a

■ Neither Article III of the Constitution nor the Seventh Amendment require a trial by·judge of suits in admiralty or equity. The constitutional guarantee is of a right to trial by jury in suits at common law.[20] One commentator has indicated the reasons why, in the event of doubt, the district court should require a jury trial:

"If a suit in equity is erroneously tried at law, the error may well be harmless. And even if the error is prejudicial, a new trial is unnecessary, since the cause may simply be remanded for the entry of findings of fact by the judge who presided over the jury trial. Therefore, both trial convenience and a due regard for the constitutional status of trial by jury seem to require that in doubtful cases discretion be exercised in favor of a jury." [21]

The United States Supreme Court has reviewed the problems involved and the procedure to be followed when the same case presents both legal and equitable claims. In Dairy Queen, Inc. v. Wood, 1962, 369 U.S. 469, 471, 82 S.Ct. 894, 896, 8 L.Ed.2d 44, the Court said:

"The Federal Rules did not, however, purport to change the basic holding of Scott v. Neely that the right to trial by jury of legal claims must be preserved * * * Nonetheless, after the adoption of the Federal Rules, attempts were made indirectly to undercut that right by having federal courts in which cases involving both legal and equitable claims were filed decide the equitable claims first. The result of this procedure in those cases in which it was followed was that any issue common to both the legal and equitable claims was finally determined by the court and the party seeking trial by jury on the legal claim was deprived of that right as to these common issues. * * * The holding in Beacon Theatres was that where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.'

" * * * the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims."

■ For " * * * the federal policy favoring jury trials is of historic and continuing strength." [22]

"[E]xcept under most imperative circumstances, a right to jury trial on legal issues may not be denied to a federal litigant on the ground that the case reached court only through equity, or because equitable rights are involved, or because the legal issues are 'incidental' to the equitable issues, or because substantive equitable remedies are sought, or by the device of trying the equitable issues first." [23]

■ Since Scott v. Neely, 1891, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358, it has been held that the right to a jury

---

party to a legal action of his right to a jury trial."

The Court therefore concluded that the district judge should not have ordered an immediate and separate trial without a jury on the issues of validity and infringement of the defendant's patent.

20. In suits at common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved. * * * U.S. Constitution, Amendment VII; Great American Ins. Co. v. Johnson, 4 Cir., 1928, 25 F.

2d 847; see also, Hart, "The Supreme Court 1958 Term," 73 Harvard L.Rev. 84, 186.

21. Hart, "The Supreme Court 1958 Term," 73 Harvard L.Rev. 84, 191 (1959).

22. Simler v. Conner, 1963, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691.

23. DePinto v. Provident Security Life Insurance Co., 9 Cir., 1963, 323 F.2d 826, 835, cert. denied 376 U.S. 950, 84 S.Ct. 965, 11 L.Ed.2d 969.

trial "cannot be dispensed with, except by the assent of the parties entitled to it; nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of a legal action or during its pendency." "[W]henever, respecting any right violated, a court of law is competent to render a judgment affording a plain, adequate, and complete remedy, the party aggrieved must seek his remedy in such court, not only because the defendant has a constitutional right to a trial by jury, but because of the prohibition of the act of congress to pursue his remedy in such cases in a court of equity." And the Fifth Circuit of Appeals said in Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 1961, 294 F.2d 486, 490:

"While the right to trial by jury is a constitutional one, no similar importance attaches to trial by court. Under the flexible procedures of the Federal Rules, a jury determines issues pertinent to an equitable cause without interruption or prejudice to the proceeding; the court decides whether equitable relief is called for on the basis of the jury's findings of fact. The mere presence of an equitable cause furnishes no justification for depriving a party to a legal action of his right to a jury trial.

" * * * It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control. * * * "

In this case there is at least one issue that is not involved in the plaintiff's suit but is involved in the limitation claim: the value of the vessel. However, the issue of "privity" is involved in the plaintiff's claim. Counsel for the plaintiff has been requested to indicate what other issues, if any, are involved both in the limitation proceeding and in the determination of the plaintiff's claim, but he has indicated no others. Therefore, in accordance with the decision in Dairy Queen, Inc. v. Wood, supra, it is ordered that plaintiff's motion for a jury trial of the issues raised by the defense of limitation set forth in the answer is granted, but to the following extent only: the issue pertaining to whether any act, matter or thing, loss, damage or forfeiture, was done or incurred for which the defendant is responsible and, if so, whether such act, matter or thing was done with the privity or knowledge of the defendant, being issues to be determined upon substantially the same evidence will be submitted to the jury.[24] In all other respects the motion is denied, and the other issues relative to the limitation of liability claimed by the defendant will be tried by the Court alone, as an Admiralty Court, after the jury arrives at a verdict.

24. The case of Murray v. N.Y. Central Railroad Company, S.C.N.Y., 1959, 171 F. Supp. 80, 2 Cir., 1961, 287 F.2d 152, 87 A.L.R.2d 681, is consistent with this result. The question of whether the jury should hear the issues arising from a plea of limitation of liability was not presented in Murray. Rather, the question was whether the limitation should be denied when the general verdict of the jury made it impossible to say which theory of negligence the jury accepted, since one of the theories advanced at trial would preclude limitation of liability. The Court of Appeal held that the findings of the District Judge that the injury was caused by the other theory which would not preclude limitation was consistent with the jury's general verdict.